Okay, our final argument of the morning is in appeal number 23-2974 Full Circle Villagebrook General Partnership v. Protech. Mr. Davenport, whenever you're ready. Good morning. May it please the court, it's an honor to be here. I appreciate your time that you're here reporting to my client. The appeal stems from a dispute over a contract provision, relatively narrow provision, in a large partnership agreement that was formed in connection with a partnership and a property to develop affordable housing pursuant to the low-income housing tax credit program. The dispute really focuses in on what was intended to be an orderly and efficient process to exit the limited partner after the end of a defining moment in the partnership, which is the 15-year compliance period. As the Sixth Circuit has told us, that's a crucial piece of the efficacy of the program, is the ability to exit the limited partner so the partnership and the property can move on to the next life cycle. So the parties, the original parties to the agreement, they planned for it and they created section 6.7, 6.4J of the partnership agreement in order to come up with a way to do that. And we're all familiar with the canons of contract construction, so we have to go back in time and put ourselves into the shoes of the original parties to figure out what it was that they were intending to do. And so when we look at section 6.4J, it tells us what this option is. 6.4 or 7.4? I mean, I think we know what you're talking about. It's 7.4J. I'm going to spoke because when you combine it with 6.2B, it's clear that what's supposed to happen is we need to get an appraisal. We need to get fair market value. We need to hypothesize a sale at that value, come up with a net amount of residual after paying off debts, and then exit the limited partner by acquiring the rent just for 10.1% of that amount. That's how it's supposed to work. How do you get around the plain language in 7.4J that the appraiser has to be on this approved list and this appraiser shall serve as the only appraiser? It specifically talks about an approved list of LaSalle Bank or Deutsche Bank. Right. Our theory is and our belief is because Delaware law governs the merger of those institutions, we look at Delaware law and what it says about merger, and it's a combination. And so they come together and the assets— But what supports that, again, in the plain language? There are other places in this contract that talk about successors. So that shows that the parties knew how to use successors when they wanted to, and there's no reference to successors here. There is not, and I—it's just not. I have to clearly acknowledge that the partnership agreement, I think, when it defines persons, talks about successors, and there's another reference in the partnership agreement that does that. But when we look at kind of the broader picture and the rules of contract construction that say what did the parties hope to accomplish— But don't we have to start with the plain language first? We do, Your Honor, right? I think that's your— Yep. You know. That's your hurdle. That's what we're living with. Right. I understand. I understand. Approved list is not defined. It's an undefined term. And so we look at, well, what did the parties intend when they said they wanted to have an appraiser off an approved list from one of these financial institutions? Well, we know from the record and we know from kind of the way the industry works, an approved list is a vetted list of approved appraisers who have been evaluated by financial institutions, and it's determined their experience is good, their professional characteristics are good, and they're going to do good work. The design here was to make sure that if we could get somebody from an approved list, then the limited partners wouldn't need to be involved. It was going to be efficient. It was going to be orderly. We would get it, and that appraiser would do his or her job. So we did our work. We tried to find out, and we learned, yep, there's been this merger, and now these approved lists have been combined with the assets of other banks, and those banks that merged together chose to take on a different name. So, for example, LaSalle Bank. If LaSalle Bank, when it merged with Bank of America, had kept the name LaSalle Bank instead of Bank of America, it would appear that the outcome would be different here because the name of the institution carried on, even though all of the assets and the liabilities of everything came together and they combined. That just doesn't seem like a rational result in our mind because we believe that given Delaware law and how the combination comes together, that list still exists. It still exists within another entity and within an organization, but the approved list is the same. It's somewhat akin to a marriage. So when my wife and I combined and we got married, she had a maiden name. She took my name. She's still a freeze. She's still part of that family. Her family became my family. My family became her family, so we combined. It's not as if those things went away. That's the best analogy I think that I can give you in terms of our theory as to how merger helps accomplish this. I think it's important to just kind of take a step back. When this happened, the response from the other side, from the appellees, was not, hey, we don't think that NKF is experienced. We don't think that they're worthy. We don't think they're an appropriate appraisal, and they really couldn't because they've been vetted by these financial institutions and they're nationwide and they're well-respected. The response was, hey, look, we will agree to accept that appraisal if you will deviate from application of 6.2B and rather than pay us 10.1%, pay us our millions of dollars in a positive capital account. When that didn't happen, now all of a sudden the litigation begins and, oh, wait a second, we're going to challenge this and we're going to take on the legal realities of the merger, but not acknowledge the practical reality, which is that list, those lists didn't vanish. They were combined and merged into the new entities under a different name. Is it clear that they were on the approved list of the successor banks? I thought that was disputed. I believe it was clear, Your Honor. We kind of mapped it out, and NKF, the appraiser themselves, they said so when they told us before they were engaged. They said, we're on the approved list, and they have the- Was there ever a list produced or evidence other than they told us? So there's organizational information from the merger documents that are in the record. What we know is LaSalle Bank merged with Bank of America, and we have all of those merger documents in the record, and then they don't necessarily have something that they call appraiser approved list. They have approved vendor list, and that approved vendor list serves, according to their testimony, as the approved list of who the appraisers are. They just don't call it approved list. If these parties had known that maybe LaSalle Bank called it vendor list or authorized persons list or whatever they call it in the organizations, I'm sure they could have done that. So by calling it approved list, they were using this generic term to encompass the broader scenario, and I think it was Berkeley Point, they called theirs like a professional services- And was NKF on both of those lists? Yes, Your Honor. I agree. I think we have to resolve this within the four corners of the contract, but I'm curious about something. It's the second sentence that I think creates a really tough situation for your client, because it contemplates that there may be a situation where those entities don't exist, or there may not be an approved list, in which situation you come together, you select an appraiser, you run it by them, and you get somebody. So here's my factual question. When your client was looking at NKF, did you reach out to the other side and say, it looks like this first sentence may not be applicable. These entities have all merged, 15 years, et cetera, has gone by, but we're going to pick NKF. We did not. Yeah. And I think that there's some, you guys are both, there's a lot of ink spilled in these briefs about a bunch of controversy nationally about picking appraisers to best suit your client's position on these purchase prices, or the exercise of these options, but I don't know that we have to get there. Understood. And we have, as I said in the briefing, we have a second action, because the crux of the dispute below was really about how to calculate the option price. If that appraisal number moves to 14, to 12, to 16, there's still that primal dispute about, is it 10.1% that they receive for their interest, or do they get this payment of millions of dollars for a capital account? They withdrew that claim in their briefing. They said, hey, if you agree with us about this approved list issue, we're going to withdraw that claim. And so the Judge Roland below did not get to that claim, and then we went, and it's in the record, we said, okay, well, we're going to try this second step now, and they turned around and sued us. So we're now back in front of Judge Roland. She's already made the determination on how to calculate the option price, and now there's an interlocutory appeal motion pending before her to see if we're going to come back before we finish that case on that issue. So I understand clearly what you're saying, Your Honor. On that last sentence, however, it says that if, however, Deutsche Bank and LaSalle Bank do not have approved list. It doesn't say if they no longer exist. It just says if they don't have an approved list. You're clear on your position. You're crystal clear. I appreciate it.  No problem, Mr. Davenport. We'll give you a little bit, 30 seconds or a minute or so. All right. No problem. Mr. Pettit, good afternoon. Good afternoon. May it please the Court. The issue before the Court on this appeal is quite narrow. Did the appellant satisfy the conditions precedent to the exercise of its purchase option under Section 7.4J of the partnership agreement? The district court correctly answered this question in the negative because it found, based on undisputed evidence, that appellant neither selected an appraiser on the approved list of either Deutsche Bank or LaSalle, nor sought and obtained appellee's consent to the appraiser that the appellant did select. I'd like to begin by identifying two important points that appellant concedes in its papers. First, appellant concedes that the selection of an appraiser is a conditioned precedent to the exercise of its purchase option under 7.4J. In fact, in its statement of issues, it specifically identifies the issue as whether appellant satisfied a conditioned precedent to the exercise of its option. And this concession is important because, as the district court correctly noted in its summary judgment order, Illinois law is particularly adamant in requiring that option contracts be strictly construed, that an option be considered exercised only if the person holding the opting powers adheres exactly to the conditions precedent to its consummation. And that's a quote from the Wilson sporting goods case, which the district court quoted in its order. Appellant does not address this authority or any of the cases cited by the district court for the propositions that option contracts must be strictly construed and that the conditions precedent must be adhered to exactly for an option exercise to be enforced. Second, appellant does not dispute that both Deutsche Bank and LaSalle were no longer in existence when appellant selected the appraiser. Appellant admits on page 15 of its reply brief that under Delaware law, when two entities merge, one of the organizational entities ceases to exist. And here, the undisputed evidence establishes that LaSalle ceased to exist when it merged with Bank of America, and that's in volume six of the appellant record at page 120, the certificate of merger, which states at 1.1 that LaSalle shall be merged with and into Bank of America and the corporate existence of LaSalle shall cease. And similarly, the record confirms that Deutsche Bank, Berkshire Mortgage, did not survive its merger with Berkeley Point. That's volume five at 197. Again, the certificate of merger, which confirms that Berkeley Point, not Deutsche Bank, is the surviving entity. And that's also consistent with Delaware corporate law, particularly Title VIII, Section 259, which says that when you have a merger, either neither of the two merged entities continue to exist or only one does. And here, it was not either of those two entities. Thus, the only way for appellant to prevail on this appeal is if the court were to hold that when the party stated in Section 7.4J that appellant shall select an appraiser on the approved list of one of those two entities, what they really meant was that appellant shall select an appraiser on the approved list of the entities or their successors. And I would respectfully submit that there were multiple reasons not to reach that conclusion. First, as the district court correctly noted, the parties easily could have included or their successors into Section 7.4J, but they did not. And as this court's recognized, Illinois courts maintain a strong presumption against adding provisions that easily could have been included in a contract but were not. And as this court has also held, this presumption is particularly strong where, as here, we have commercially sophisticated parties who knew how to say what they mean and have an incentive to draft the agreement carefully. And as came out in opposing counsel's argument, the partnership agreement confirms that when the parties intended to include successors, they said so affirmatively. So the definitions of lender and the definition of persons in the partnership agreement both affirmatively identify successors and assigns as part of that definition. And so the absence of the term successor in 7.4J is meaningful and indicates that the parties did not intend to include successors there. Third, the appellant does not and cannot point to any extrinsic evidence in the record to suggest that when the parties decided that appellant did not need the limited partner's consent to accept an appraiser on the approved list of either LaSalle or Deutsche Bank, they intended to extend that waiver of the consent right to the successors of those entities. And so even if the court were to somehow conclude, contrary to the district court, that the appraiser selection language of 7.4J was ambiguous, appellant can't point to any extrinsic evidence to support a resolution of that ambiguity that would include the insertion of the term or their successors. With all that in mind, appellant essentially makes two arguments in its papers for why 7.4J should be read to include successors. First, appellant argues that interpreting 7.4J to exclude successors would lead to what they refer to as absurd results. But I think respectfully, Your Honor identified why that's not the case here because you have this additional sentence that specifically contemplates what does happen if there are no approved lists from either of these two entities. And what happens is fairly simple. The general partner calls up the limited partner and says, hey, we want to use this appraiser. Do we have your consent? Under that language, the consent cannot be unreasonably withheld. And so, you know, if that happens, the limited partners need to be reasonable about that. And as opposing counsel indicated, subsequent to this judgment and outside of the four corners of this appeal, there was that conversation. There was an agreement to have another appraiser. And that process is proceeding and there will be and that obviously is not before the court today, but it just shows that these things are not it's not an absurd result here. And also, the other argument that the appellant makes is that the successor entities essentially inherited the approved lists from LaSalle and Deutsche Bank, such that those lists essentially, although the entities didn't continue to exist, those lists carried on with the successors. But there's no evidence in the record that either of the two entities that are identified in 7.4J had approved lists at the time of the merger. And in fact, the record shows that the purported lists on which the appellant seeks to rely on were both created after the mergers. So they both postdated the cessation of existence of the two entities that are identified in 7.4J. And I'll specifically refer you to Volume 6 at page 75, which shows that the list from Berkeley Point, which is the purported successor to, I believe, LBNA, I'm sorry, of the Deutsche Bank entity, was created on April 1st, 2020, many years after that entity ceased to exist. And then on Volume 6 at page 65, paragraph 8, establishes from a declaration from Bank of America that the list that they're relying on was first created in July of 2017. Again, after the merger, after the existence of the entity identified in 7.4J had ceased. And for all of these reasons, we respectfully submit that the district court got it right when it concluded that 7.4J was unambiguous and did not include successors. The one last point I wanted to make, and this sort of addresses one of the issues that came up that Your Honor asked about, in terms of whether there were approved lists. The court, if the court somehow, if this court somehow finds that 7.4J was ambiguous and that it should be interpreted in a way that would include successors, it then needs to go on to the, then the question becomes were there approved lists for these successors. And the court respectfully should still not conclude that the condition precedent has been satisfied because the evidence shows that the successors, Berkeley Point and Bank of America, did not have approved lists. And the district court did not directly reach this question because it found as a threshold matter that the successors were not included. But it did note at page 12 of its order that appellant, quote, advocates for a broad interpretation of what constitutes an approved appraisal list. And the list themselves, which are identified in the record at volume six, page 75, raises some question as to whether these were actually approved lists and including that one of the lists apparently is from a parent of the entity that conducted the appraisal, which sort of establishes why you wouldn't just agree to successors back 15 years ago because you might have exactly that situation. So with that, Your Honor, I see that my, Your Honor, I see that my time is up. So unless there are any questions, I ask that you affirm the district court's order. Thank you, Mr. Pettit. Mr. Davenport? I think really the only thing I'd like to do is offer an answer to your question as to where things are in the record, Your Honor. In our principal brief on pages 21 and 22, we cite all the record evidence relative to the merger documents. That's all I have. Okay. Mr. Davenport, thank you. Thank you. Mr. Pettit, thanks to you, we'll take the appeal under advisement. That concludes today's arguments, and the court will be in recess.